

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT NASHVILLE

| | | |
|---|---|---|
| **John Stevens,** | ) | **Docket No. 2024-60-5520** |
| **Employee,** | ) | |
| **v.** | ) | |
| **Ryder Transportation Solutions, LLC,** | ) | **State File No. 860304-2024** |
| **Employer,** | ) | |
| **And** | ) | |
| **Indemnity Insurance Company of** | ) | **Judge Kenneth M. Switzer** |
| **North America,** | ) | |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER
### (DECISION ON THE RECORD)

---

In this accepted claim, the current dispute is whether John Stevens is entitled to additional medical benefits. Ryder Transportation Solutions initially furnished treatment of his lumbar and thoracic spine and later authorized an evaluation of the right shoulder. Mr. Stevens seeks evaluation and treatment of his neck and both shoulders. Because he has not shown he is likely to prove that the injuries he now alleges arose primarily out of employment, his requests are denied.

### Claim History

*Mr. Stevens's proof*

According to the petition, on August 5, 2024, Mr. Stevens injured his "[c]ervical, thoracic, and lumbar spine" at work. Specifically, "[w]hile driving a forklift, Employee hit/ran over objects that caused the forklift to 'jolt,' causing immediate back pain." Mr. Stevens described the accident in his declaration as follows: "in my lane, there were approximately four (4) metal bolts on the ground. I unintentionally ran over the bolts, causing the forklift to jolt and injure my back."

Mr. Stevens was seen at a clinic two days later; he testified that he "presented with moderate upper and lower back pain that radiated into my right arm." Records from the visit describe the accident as "hitting a piece of metal while driving forklift," and they confirm that his symptoms were "[u]pper and lower Back and right posterior shoulder pain." The doctor diagnosed strains of the lumbar and thoracic regions, placed work restrictions, and prescribed physical therapy for "[s]train of lumbar region."

Mr. Stevens returned a week later, where a physical therapist noted a different mechanism of injury: "Pt was backing up in forklift and ran over steel rods sticking out of the ground which were not marked. This caused a jarring or compressive type force causing immediate pain in the lumbar and thoracic spine as well as the R shld." Mr. Stevens saw a nurse practitioner that same day, who repeated the diagnoses from the first visit and increased the work restrictions.

At a follow-up visit a week later, the nurse practitioner noted that x-rays showed "[m]ild degenerative changes" and "moderate scoliosis." He also ordered an MRI of the lumbar and thoracic spine.

Mr. Stevens returned in September, and the nurse practitioner documented the same complaints and repeated the diagnoses. The nurse practitioner wrote that the MRI was stopped before it could be completed, and he referred Mr. Stevens "to ortho spine to further evaluate for causation."

Mr. Stevens saw Dr. Tarek Elalayli in October, whose notes document that the "reason for appointment" was solely "lumbar," despite him also mentioning the neck. Dr. Elalayli, a panel physician, wrote:

> He was backing up his forklift when he ran over some steel rods and bounced quite hard. He had immediate onset of pain in the mid back, neck pain, and low back pain. About a week later, he started experiencing some right shoulder pain. . . . Patient presents with multiple complaints, but I am authorized to evaluate his lower back.

Dr. Elalayli reviewed the MRI findings, noting that the procedure was incomplete but nonetheless "did not demonstrate any acute or concerning findings." He diagnosed a lumbar strain and referred Mr. Stevens to Dr. Jeffrey Hazlewood, a physical medicine and rehabilitation specialist, for "LBP" (lower back pain).

Mr. Stevens returned to Dr. Elalayli a week later, seeking "an evaluation of his entire spine including his cervical and thoracic." Dr. Elalayli wrote, "My understanding is that I was previously authorized to treat just the lower back. There does seem to be some confusion[.]" Dr. Elalayli repeated that Dr. Hazlewood should assume Mr. Stevens's care.

2

Mr. Stevens saw Dr. Hazlewood on December 9. He did not offer the doctor's complete treatment notes. Rather, the only record offered by Mr. Stevens is a final medical report placing him at maximum medical improvement for the lumbar spine on that date and assigning a 0% impairment rating with no restrictions.

According to Mr. Stevens's declaration, Dr. Hazlewood examined his low back but also:

> [S]tated that he was very concerned about the left side of my neck and right shoulder because I could not raise my right arm very high. Dr. Hazlewood also stated that I lost five percent (5%) of my height. Following my physical examination, Dr. Hazlewood stated that he wanted to get me back in to look at my neck and right shoulder as well as order a new MRI.

### *Ryder Transportation's proof*

Ryder Transportation offered notes from the December 9 visit with Dr. Hazlewood, as well as a record review report and responses to a questionnaire; they paint a very different picture of Mr. Stevens's encounter with Dr. Hazlewood and of the doctor's opinions.

Dr. Hazlewood described the accident as "[h]e was backing up on a lift and ran over metal rods that were left hanging out of the floor and it caused the back end of his lift to rear up, slam down on the ground and he got a jerk/jar to his low back." Dr. Hazlewood examined the right shoulder and spine including the neck.

Below are Dr. Hazlewood's impressions:

> 1. Diffuse cervical thoracic and lumbar pain of unknown etiology. I am only approved to treat the thoracic and lumbar spine and I find nothing to suggest any disc herniation, radicular symptoms or radiculopathy in either region. He had an abbreviated MRI of the lumbar spine that apparently was unremarkable. That is per Dr. Elalayli's record and we are trying to get the report. This would be a mechanical/soft tissue injury and I have [no] explanation given the mechanism of injury which was a "non-violent" event of why he would be getting worse not better with axial pain only 4 months later.
> 2. He also complains of cervical pain with diffuse referral down the right upper extremity non-anatomically. He also complains of right shoulder pain. Differential diagnosis might include disc herniation in the cervical spine but I doubt it. Differential diagnosis would include a rotator cuff tear in the shoulder but I can not explain how it would occur with this injury. There is inconsistency of when this began as he told me today it was from day 1 of

the injury yet seemed to indicate to Dr. Elalayli that it was just recently that began which he denies today.

Dr. Hazlewood recommended:

> [T]here is nothing else I know to provide from my standpoint for the thoracic and lumbar spine and that is what we are approved for today. I think it is a musculoskeletal injury and I can not [sic] explain why it is not resolving and especially why it is getting worse later in this setting of significant non-physiological signs on exam. With that being stated, I think he has reached MMI *for no more than soft tissue injuries in the thoracic lumbar region.*

(Emphasis added). Dr. Hazlewood additionally wrote that Mr. Stevens could return "as needed."

Approximately two weeks later, Dr. Hazlewood performed a "medical record review" at Ryder Transportation's attorney's request.[1]

Counsel asked whether the August 5 accident injured Mr. Stevens's cervical spine or right shoulder. Dr. Hazlewood responded no. He questioned if the mechanism of injury as he understood it could cause a cervical disc herniation or rotator cuff tear. Dr. Hazlewood wrote: "He had severe pain complaints in the thoracic and lumbar spine yet imaging studies were unremarkable to explain these complaints. Therefore putting all these factors together I cannot state that he suffered any traumatic injury to his cervical spine with the accident from 8-5-2024." Dr. Hazlewood further concluded about Mr. Stevens's shoulder that he has "significant range of motion deficits that I have no explanation for. Simply riding in a forklift going over a screw bolt plate in the floor should not cause a rotator cuff tear."

Dr. Hazlewood then emphasized, "I <u>cannot state</u> that any ongoing pain at this point is attributed to the injury from 8/5/2024." As for additional treatment, Dr. Hazlewood stated, "[I]f he continues to have these subjective complaints, he can seek treatment and evaluation with the cervical spine MRI and a shoulder MRI, but I cannot state that these are necessitated by the injury from 8/5/2024 for all these reasons."

After seeing Dr. Hazlewood, Mr. Stevens returned to the clinic on January 2, 2025, "with authorization from his adjuster for the right shoulder only at this point however still noting some left cervical pain in addition to the persistent lumbar and thoracic which has

---

[1] In addition to medical records, Dr. Hazlewood also considered photos, the "Employer's Report of Injury" dated August 12, and "Correspondence" from August 7. These were not attached to the report or offered by Ryder Transportation, so the Court cannot know what Dr. Hazlewood might have gleaned from this information and specifically whether it contains facts not admitted into evidence. However, Mr. Stevens did not object.

been previously assessed and released by a specialist at 0% MMI." A nurse practitioner diagnosed a right-shoulder strain and placed no work restrictions. He ordered an x-ray of the shoulder, which showed "an unremarkable examination."

Ryder Transportation additionally provided notes from Dr. Elalayli from a visit in January 2025. The doctor reviewed the x-rays and said they demonstrated evidence of "some spondylosis but no acute or concerning findings." He also reviewed x-rays of the cervical spine, which showed "diminished lordosis but otherwise a healthy appearing cervical spine." Dr. Elalayli placed no work restrictions and concluded that Mr. Stevens did not need to follow up with him but might continue under Dr. Hazlewood's care. Further, in responses to a causation letter from Ryder Transportation's attorney, Dr. Elalayli wrote that he deferred to Dr. Hazlewood's opinions.

In addition to medical proof, Ryder Transportation offered documentary proof, which Mr. Stevens did not object to. It submitted an undated First Report of Injury that lists the "lower back area" as the injured body part and unauthenticated photographs.[2] It also introduced an incident report where a manager reported injuries to Mr. Stevens's upper and lower back and explained the mechanism of injury in two ways. First, on the date of injury, according to the manager, Mr. Stevens "was driving a forklift and as EE turned Left, the forklift ran over some 'little stops' and EE felt his Upper and Lower Back was 'jarred.' EE denies a head or neck injury." Second, the report stated that Mr. Stevens called back two days later and said, "when he was driving a forklift, the forklift ran over metal rods, jarring his back. . . . [H]e is unable to lift his R arm above his head because of back pain."

**Findings of Fact and Conclusions of Law**

At an expedited hearing, Mr. Stevens bears the burden of proof and must show that he is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239 (2024); *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

Here, Ryder Transportation accepted Mr. Stevens's claim and furnished treatment as required by section 50-6-204(a)(1)(A). The issue is whether Mr. Stevens is entitled to "a focused examination of his upper back and shoulders" with the authorized treating physicians.[3] The Court holds Mr. Stevens is not because the medical proof does not support his requests.

---

[2] The photos depicted the objects that Ryder Transportation argued Mr. Stevens's forklift ran over, but it did not support the photos with an affidavit explaining who took the photos or when. The Court did not consider these photos.

[3] Mr. Stevens further requested "authorization of another MRI should the treating physicians deem it appropriate and necessary." Since a treating physician has not made that recommendation for the work injury, the request is not ripe.

Turning to the medical proof and specifically the right shoulder, Mr. Stevens did *not* plead this as an injured body part in his petition, filed two weeks after the accident. But he did mention difficulty raising his right arm to a manager two days after the accident and right-shoulder symptoms at the clinic. Over several visits, clinicians did not list the right shoulder within their diagnoses but only found mid- and low-back strains. By the time Mr. Stevens saw Dr. Elalayli, Ryder Transportation had limited his treatment to the thoracic and lumbar spine, presumably (and reasonably) relying on the First Report of Injury and especially the clinicians' diagnoses.

Dr. Hazlewood noted that he was not authorized to treat the right shoulder at the December 9 visit, but he nonetheless examined it and questioned how a potential rotator cuff tear could occur as he understood the mechanism of injury. In his record review report, Dr. Hazlewood repeated that opinion.

Ryder Transportation apparently had a change of heart and authorized a right-shoulder evaluation at the clinic in January. A nurse practitioner diagnosed a right-shoulder strain but placed no work restrictions for it. He also ordered an x-ray of the shoulder, which showed "an unremarkable examination." Dr. Elalayli likewise reviewed the shoulder x-rays in January and said they demonstrated evidence of "some spondylosis but no acute or concerning findings."

In sum, Mr. Stevens has asked this Court to order what he has already received: an evaluation of his right shoulder, by a nurse practitioner and Dr. Elalayli, a specialist. And, as Ryder Transportation argued, nothing in the medical records suggests that an evaluation and treatment of *both* shoulders is necessary. To be entitled to medical benefits, section 50-6-102(12) requires an employee to prove "disablement or a need for medical treatment." Mr. Stevens has not satisfied his burden to show that he is likely to prove at a hearing that his shoulders are disabled or need treatment.

Turning now to the neck, Mr. Stevens's petition does list the cervical spine as an injured body part. But importantly, per the clinic notes where he first treated, Mr. Stevens did *not* mention a neck injury.

Rather, he first brought up his neck when he saw Dr. Elalayli in October, and with Dr. Hazlewood on December 9. Despite being unauthorized to treat the neck, Dr. Hazlewood examined it and ruled out a disc herniation in the cervical spine. Dr. Hazlewood did not give a causation opinion about the alleged neck injury at that time, but after performing a record review, he unequivocally concluded that the neck condition was not related to the August 5 work incident. Therefore, the Court cannot find that Mr. Stevens is likely to prove his alleged neck injury arose primarily out of employment.

Mr. Stevens argued that *Sullivan v. Petree Arbor Lawn & Landscape, Inc.,* 2024 TN Wrk. Comp. App. Bd. LEXIS 43, at *11 (Nov. 13, 2024), supports his position. In *Sullivan,*

the Appeals Board held, "[T]here is no statutory requirement that an employee identify every physical condition or symptom he or she believes is related to a work accident at the time notice of that accident is given." *Id.* The Board affirmed the trial court's grant of additional medical benefits to evaluate and potentially treat an injured worker's left shoulder, where the authorized physician had only treated the right shoulder. The Board reasoned that the worker had "complained of left-sided symptoms within two weeks of the work accident, and . . . [the doctor] acknowledged he has not evaluated the left shoulder." *Id.* at *12.

Mr. Stevens's circumstances differ in both respects. While his attorney pled the neck as an injured body part, Mr. Stevens did not mention it to the clinicians and specifically denied a neck injury to the manager who completed the incident report. He did not mention neck symptoms to his medical providers until almost three months after the accident, when he saw Dr. Elalayli. "The length of time between a work accident and the request for medical treatment, while not dispositive, is a relevant factor to consider in the court's analysis of whether an employee is entitled to medical care at an interlocutory stage of the case." *Morton v. Morsey Constructors,* 2021 TN Wrk. Comp. App. Bd. LEXIS 33, at *14 (Oct. 4, 2021). Finally, unlike *Sullivan,* Dr. Hazlewood, an authorized treating physician, has evaluated both Mr. Stevens's neck and shoulder—and found no causative link between their condition and the work incident.

The Court holds that Mr. Stevens is not likely to prevail at a hearing on the merits, and his requests are denied.

However, as Dr. Hazlewood agreed to see him as needed for the lumbar and thoracic spine injuries, Mr. Stevens may return to him for any "reasonable and necessary medical treatment causally related to the work injury." *Limberakis v. Pro-Tech Sec., Inc.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 53, at *7 (Sept. 12, 2017). If Dr. Hazlewood declines to see him, Ryder Transportation must immediately offer a new panel of specialists. *Id.* at *10.

The March 24 status hearing is canceled. Instead, a scheduling hearing is set for **May 5 at 11:15 a.m. Central Time.** You must call 615-532-9552 or 866-943-0025 to participate. The Court will set deadlines for any remaining discovery, post-discovery mediation, and the compensation hearing at that time.

IT IS ORDERED.

**ENTERED February 19, 2025.**

*Kenneth M. Switzer*
**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

7

**Appendix**

The Court considered these documents:

1. Petition for Benefit Determination
2. Dispute Certification Notice and Employer's Request to Amend Dispute Certification Notice
3. Hearing Request
4. Employee's Medical Records
   a. Concentra, August 7-October 25, 2024 (pages 36-43 removed, duplicative)
   b. Hendersonville Medical Center-MRI Report
   c. Dr. Tarek Elalayli, M.D., Advanced Ortho and Spine, October 30-November 11, 2024
   d. Final Medical Report
5. Hearing Request and Rule 72 Declaration of John Stevens
6. Status Hearing Order
7. Docketing Order
8. Employee's Brief
9. Employer's Response to Employee's Expedited Request for Benefits
10. Employer's Submission of Evidence
    a. Dr. Jeffrey Hazlewood's December 9 notes and record review report
    b. Concentra, January 2, 2025
    c. Dr. Elalayli, January 15, 2025, and causation letter, February 5, 2025
    d. Panel selecting Dr. Elalayli
    e. Photos (not considered)
    f. First Report of Injury
    g. Employer's Incident Report

.

**ENTERED February 19, 2025.**

Kenneth M. Switzer

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

**CERTIFICATE OF SERVICE**

I certify that a copy of this Order was sent as indicated on February 19, 2025.

| Name | Certified Mail | Regular mail | Email | Sent to |
|------|------|------|------|------|
| Adam Brock-Dagnan, employee's attorney | | | **X** | adam.brockdagnan@forthepeople.com Christopher.howell@forthepeople.com |
| Stephen Morton, employer's attorney | | | **X** | stephen.morton@mgclaw.com amber.dennis@mgclaw.com |

Penny Shrum
Clerk, Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

    When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

    **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____       ☐ Motion Order filed on _____

☐ Compensation Order filed on_____       ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee
Appellee's Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*